**PERCIVAL CONSTRUCTION CO.,**
**Plaintiff,**

v.

**MILLER & MILLER AUCTIONEERS,**
**INC., Defendant,**

**Ancel Earp et al., Counter-**
**Defendants.**

**No. CIV-73-79-E.**

United States District Court,
W. D. Oklahoma.
Sept. 12, 1973.

---

** Defendants assert—and plaintiffs deny—that this proceeding was an arbitration.

Charles W. Stubbs, Oklahoma City, Okl., for plaintiff.

Shirk, Withington, Work & Robinson, Oklahoma City, Okl., and Garrett, Settle & Callaway, Ft. Worth, Tex., for Miller & Miller Auctioneers, Inc.

John B. Hayes, Oklahoma City, Okl., for U. S. Fid. & Guar. Co. and Fid. & Guar. Ins. Underwriters, Inc.

Clyde A. Muchmore and Charles W. Mooney, Jr., Oklahoma City, Okl., for Stock Yards Bank.

William R. Burkett, U. S. Atty., W. D. Okl., and Givens L. Adams, Asst. U. S. Atty., Oklahoma City, Okl., for U. S.

EUBANKS, District Judge.

The matter now before the Court for disposition is the Motion of Counter-Defendant Stock Yards Bank for Partial Summary Judgment. Plaintiff Percival Construction Co. (Percival) commenced this action against Defendant Miller & Miller Auctioneers, Inc. (Miller) to recover $30,000.00 as proceeds from the sale of certain equipment, allegedly owned by Percival, which was sold at an auction sale conducted by Miller on December 5, 1972, at which most of the assets of Counter-Defendant P & A Construction Co., Inc. (P & A) were sold. Miller counterclaimed by Interpleader against other parties to the action who have asserted claims to part or all of the auction proceeds of $69,158.59 which Miller has paid into this Court.

On October 12, 1970, Percival and P & A entered into an agreement (styled "Lease") which provided that Percival, as Lessor, leased to P & A certain described equipment for a minimum rental period of thirty-six months for a consideration of $2,000.00 per month. The "Lease" expressly provides that: "Lessee has the option to purchase at a time

agreed upon by both parties with 93% of rentals paid to apply against a purchase price of $75,000.00."

Percival did not file a financing statement covering the leased equipment with the County Clerk of Oklahoma County, Oklahoma. Following possession of the equipment, P & A borrowed money from Counter-Defendant Stock Yards Bank (Bank) on promissory notes and, as collateral security therefor, reportedly executed a "Financing Statement & Security Agreement" (Chattel Mortgage) whereby P & A granted to Bank "a security interest pursuant to the Uniform Commercial Code (Oklahoma) in and to" certain items of equipment of which P & A was possessed under the "Lease" agreement with Percival. Bank timely filed a financing statement with the County Clerk of Oklahoma County, Oklahoma, which statement listed the aforementioned certain items of equipment. Thereafter P & A became delinquent in rental payments as they fell due. On October 16, 1972 P & A and Percival agreed that the current balance due under the "Lease" was $32,200.00. This amount was computed by crediting 93% of the rentals, which had been paid, toward the $75,000.00 "Lease" purchase option price. The parties further agreed that P & A should sell the equipment, through an auctioneer, and that if the gross proceeds should be less than $32,200.00, P & A should pay all proceeds of the sale, less auctioneer's commission to Percival, but that if the gross proceeds should exceed $32,200.00 P & A should pay $30,000.00 to Percival. The equipment covered by the "Lease" which was shown on P & A's "Financing Statement and Security Agreement" with Bank, was sold on December 5, 1972, at an auction sale which had been arranged by P & A for approximately $36,000.00. The auction proceeds on all items sold at the auction totaled $69,158.59. Bank claims a security interest in certain of the proceeds of the sale as the proceeds of an account receivable due P & A from Miller and has moved for partial summary judgment solely on whether the "Lease" agreement between Percival and P & A is a true "lease" or simply "intended as security."

The parties termed their agreement a "Lease". Their designation is not, however, necessarily controlling. A conditional contract for sale of personal property is not changed into a lease by designating the instrument as a lease, the parties as Lessor and Lessee, and consideration as rental or rent. The controlling factor is the legal effect of the instrument as gathered from all its provisions.

The issue now to be determined herein is whether the "Lease" between Percival and P & A is a security agreement as defined by 12A O.S.A. § 1-201(37). The cited statute defines a "security interest" in pertinent part as follows:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 2-401) is limited in effect to a reservation of a "security interest" . . . Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (Section 2-326). Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) *an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.* (Emphasis added)

Movant Bank contends that inasmuch as P & A, under its "Lease" with Percival, had "the option to become the owner of the property . . . for a nominal

consideration does make the lease one intended for security" within the terms of the statute. Neither the briefs of counsel nor the research of the Court has disclosed a reported adjudication wherein the factual situation precisely parallels the case at bar. See Annotation, 11 ALR3d 1231, What Constitutes a Security Interest. The consideration and factors which are determinative of the matter, however, are set out in Crest Investment Trust, Inc. v. Atlantic Mobile Corp., 1967, 252 Md. 286, 250 A.2d 247, as follows:

1. The facts in each case control to show intention of the parties to create a security interest.

2. Reservation of title in a lease or option to purchase appurtenant to or included in the lease does not in and of itself make the lease a security agreement.

3. Lease agreement which permits the lessee to become the owner at the end of the term of the lease for a nominal or for no additional consideration is deemed intended as a security agreement as a matter of law.

4. The percentage that option purchase price bears to the list price, especially if it is less than 25% is to be considered as showing the intent of the parties to make a lease as security.

5. Where the terms of the lease and option to purchase are such that the only sensible course for the lessee at the end of the lease term is to exercise the option and become the owner of the goods, the lease was intended to create a security interest.

6. The character of a transaction as a true lease is indicated by:

   (a) Provision specifying purchase option price which is approximately the market value at the time of the exercise of the option.

   (b) Rental charges indicating an intention to compensate lessor for loss of value over the term of the lease due to aging, wear and obsolescence.

   (c) Rentals which are not excessive and option purchase price which is not too low.

   (d) Facts showing that the lessee is acquiring no equity in leased article during the term of lease.

Percival contends that the "Lease" herein is a true lease and not a security interest. The "Lease" fixes a "purchase option price" of $75,000.00 but, except for the supporting affidavit of President Bill R. Weaver of P & A that the "equipment would be worth approximately $25,000.00 to $30,000.00 on October 12, 1973," the expiration date of the "Lease", the Court is uninformed whether the purchase option price approximated "the market value at the time of the exercise of the option." Moreover, the rental charge of $72,000.00 indicates an intention to compensate Percival for loss of value over the term of the lease due to aging, wear and obsolescense of the equipment. The "Lease" obligated P & A "upon the termination of this lease to return said property to the Lessor in as good condition as received, natural wear and tear excepted." The foregoing would characterize the "Lease" as a true lease.

On the other hand, the percentage that the option purchase price bears to the list price is significantly less than 25%. Moreover, in view of the right of P & A to apply 93% of $72,000.00 rentals against the purchase price of equipment which Percival valued at $75,000.-00 on the date of the lease and which P & A was bound to maintain in as good condition as when received, natural wear and tear excepted, it appears that the only sensible course for P & A at the end of the lease term was to exercise the option and become the owner. Significantly, also, the "Lease" provides that P & A "shall be liable for the full rental ($72,000.00) for the entire minimum pe-

riod (thirty-six months) even though the property is returned to the Lessor (Percival) prior to the termination of the minimum period." The foregoing considerations and factors would characterize the "Lease" as one intended for security within the terms of the applicable statute.

The "Lease" in the case at bar is strikingly similar to the agreement in issue in the early and oft-cited case of In re Royer's Bakery, Inc., (1963, F DC Pa.) 59 Lanc.L.R.; 56 Berks County Law Journal 48; 1 UCC Rep.Serv. 342 (Hiller Referee, E.D.Pa.1963), discussed in Annotation, 11 ALR3d 1239, wherein the court opined that whenever a lease agreement pertaining to personal property gives the lessee an equity or pecuniary interest in the leased property, the parties to the transaction are deemed, as a matter of law, to have intended the lease as security.

*Royer's Bakery, Inc.* supra, was a reclamation proceeding by a purported lessor to recover the proceeds arising from the sale of "leased" equipment by the bankrupt's trustee. As in the case at bar, the lessor had failed to file a UCC financing statement covering the equipment. Royer's Bakery had "leased" the equipment for a term of thirty-six months with thirty-six required rental payments of $146.00. By the terms of the lease 80% of the rental payments were to be applied toward the list price of $4,650.00 under Royer's Bakery's ongoing option to purchase the equipment at that price. After the thirty-six rental payments Royer's Bakery could have purchased the equipment for the option price of $445.20.

The similarity between the *Royer's Bakery* lease and the "Lease" herein is striking. The monthly rental in Royer's Bakery was approximately 3.1% of the purchase price named in the lease and the rental under the "Lease" herein was approximately 2.7% of the like purchase price. Each provided for thirty-six rental payments. The option price in *Royer's Bakery*, after the 80% credit over thirty-six payments, would have been approximately 9½% of the lease purchase price. The option price at the end of the term under the "Lease" herein would have been approximately 11% of the lease purchase price. Moreover, 93% of the rentals under the "Lease" herein were credited toward the purchase price, whereas only 80% were so credited under the *Royer's Bakery* lease. Significantly, the lessee in *Royer's Bakery* had an option to terminate the lease at any time upon thirty days notice, and was therefore only contractually bound to pay two months rent, whereas P & A under the "Lease" herein was bound to pay $72,000.00 in "rentals" over the three year term.

In holding that the lease was "intended as security" the Court in *Royer's Bakery* reasoned as follows:

Of course, every writing should be interpreted according to its subject matter. By the express provisions of the Code an option to purchase in a lease of equipment is not to be treated as being inconsistent with a pure lease. Standing alone the option to purchase in a lease of equipment is thereby excluded by the Code as indicia of a lease intended for security. But where, as here, 80% of all prior rentals paid may be applied to the purchase price at any time the option to purchase is exercised, a new and different element is introduced.

A provision such as this in a lease readily provides a device for financing the purchase of equipment. By crediting earlier payments of rent to the purchase price, the lessee is accorded an equity or pecuniary interest in the subject matter of the lease which he may recover at his option.

It would seem therefore, that whenever it can be found that a lease agreement concerning personal property contains provisions the effect of

which are to create in the lessee an equity or pecuniary interest in the leased property the parties are deemed as a matter of law to have intended the lease as security within the meaning of Sections 9–102 and 1–201(37) of the Uniform Commercial Code. 1 UCC Rep.Serv. at 345–46 (footnote omitted).

Inasmuch as the petitioner-lessor in *Royer's Bakery, Inc.* had failed to file his security agreement, conformably to § 9–302 of the Uniform Commercial Code, the Court concluded that his unperfected security interest in the proceeds from the sale of the equipment by the bankruptcy trustee was subordinate to the rights of the trustee.

In view of the higher percentage of rentals credited and the absence of an option to terminate in the case at bar the above-quoted reasoning of the Court is even more compelling than in *Royer's Bakery, Inc.* that the "Lease" herein is one "intended for security." The terms of the written "Lease" heretofore quoted stand uncontroverted under the proof before the Court.

For the reasons above-stated the Court finds that the "Lease" herein was "intended as security" and concludes that the Motion of Defendant Bank so contending should be sustained. Accordingly,

It is ordered, That Motion of Counter-Defendant Stock Yards Bank for Partial Summary Judgment that the "Lease" entered into by and between Percival Construction Co. and Counter-Defendant P & A Construction Co., Inc., dated October 12, 1970, is a lease intended as security within the meaning of 12A O.S.A. § 1–201 (37), be and the same is hereby sustained.

Counsel for said Counter-Defendant will prepare an appropriate Order for approval and entry herein.