**EQUICO LESSORS, INC., Plaintiff,**

v.

**Charles L. WETSEL, d/b/a Farmers Equipment Company, Steven C. Wetsel, Oma Mae Wetsel, and Everett C. Wetsel, Defendants.**

**No. CIV–82–1137–E.**

United States District Court, W.D. Oklahoma.

March 18, 1983.

---

Joseph W. Strealy, Oklahoma City, Okl., for plaintiff.

James P. Garrett, Garrett & Salter, Mangum, Okl., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

·EUBANKS, District Judge.

### Introduction

This action to recover a deficiency judgment against the debtors under a lease agreement and against the guarantors of the agreement was heard by the court on February 16, 1983. Both parties have filed proposed findings of fact and conclusions of law. The court finds and concludes as follows.

The issues to be determined are:

1. Whether the agreement here in question is a lease intended as security within the definition of Title 12A Oklahoma Statutes, § 1–201(37).

2. If so, whether plaintiff may recover a deficiency judgment where defendants failed to receive notice of the time after which a private sale would occur as required by Title 12A Oklahoma Statutes, § 9–504(3).

▮ In Oklahoma, "whether a lease is intended as security is to be determined by the facts of each case." Title 12A Oklahoma Statutes, § 1–201(37); *Tulsa Port Warehouse Co. Inc.*, 690 F.2d 809, 811 (10th Cir.1982). The factors to be considered in determining the character of a transaction as a true lease or a security interest have been identified on numerous occasions by the courts. *See: In re Tulsa Port Warehouse Co.*, 690 F.2d 809 (10th Cir.1982); *In re Fashion Optical, Ltd.*, 653 F.2d 1385 (10th Cir.1981); *United States v. Federal Insurance Co.*, 634 F.2d 1050 (10th Cir.1980); *Citicorp Leasing, Inc. v. Allied Institutional Distributors, Inc.*, 454 F.Supp. 511 (W.D.Okl.1977); *Percival Construction Co. v. Miller & Miller Auctioneers, Inc.*, 387 F.Supp. 882 (W.D.Okl. 1973), *aff'd as to this part*, 532 F.2d 166, 172 (10th Cir.1976). Each of the factors

identified for consideration does not automatically eliminate the possibility of a true lease or the intention to create a secured interest. The essence of an agreement is to be determined by its total effect, not by its form. *Commissioner v. P.G. Lake, Inc.*, 356 U.S. 260, 266–67, 78 S.Ct. 691, 695, 2 L.Ed.2d 743 (1958). Thus, the controlling factor is the legal effect of the instrument as gathered from all its provisions, *Percival, supra*, 387 F.Supp. at 884; e.g., the undisputed economic realities of the transaction. *United States v. Federal Insurance Co., supra*, at 1054; *In re Fashion Optical, supra*, at 1389.

### Findings of Fact

1. The plaintiff is a Delaware corporation with its principal place of business in Minneapolis, Minnesota.

2. The defendants are citizens of the State of Oklahoma.

3. The matter in controversy exceeds the sum of $10,000 exclusive of interest and costs.

4. Plaintiff is a subsidiary of The Equitable Life Assurance Society of the United States. The commercial leasing of equipment is a major business activity of plaintiff, which claims ownership of its leased equipment for tax purposes such as depreciation allowance.

5. Defendants operate the family-owned Farmers Equipment Company, Inc., an Allis-Chalmers farming equipment dealership, with its principal place of business in Mangum, Oklahoma.

(a) Farmers Equipment Company started its business July 1, 1969, does approximately one million dollars worth of business in a year, employed 10 to 12 persons in 1979, and deals with sales representatives from equipment manufacturers and with contracts for the sale of farming equipment.

(b) Defendant Charles Wetsel has a college degree with a major in marketing and psychology.

6. The defendants decided to obtain a computer to be used in their business, de-

siring to lease the equipment in order to claim the costs as a business expense for tax purposes and to avoid the effect a sale would have on their credit line at their bank.

7. Defendants Charles and Steven Wetsel selected the items of computer equipment from Sure Data Systems of Greeley, Colorado.

8. In response to defendants' expressed desire to obtain "outside financing" for the transaction, Sure Data Systems contacted plaintiff in accordance with an established business relationship and proposed that plaintiff purchase the equipment for subsequent leasing to defendants.

9. Plaintiff's standard equipment lease form was mailed to defendants and was executed by Charles and Steven Wetsel on October 25, 1979. A personal guaranty of the payment obligation contained in the lease agreement was executed by Oma Mae and Everett C. Wetsel on October 25, 1979.

10. The price and time terms applicable to the agreement are contained in a modification agreement executed by Charles and Steven Wetsel on October 25, 1979, providing for an initial payment of $2,000 due August 30, 1979, and quarterly payments of $1,845.78 beginning September 30, 1979, and ending June 30, 1984; a total of one (1) payment of $2,000 and a string of twenty (20) payments of $1,845.78 over approximately a five-year period of time.

11. Equico paid Sure Data Systems $27,494.10 for the computer equipment and expected to receive $38,915.60 from defendants pursuant to the agreement.

(a) Where the equipment cost was $27,-494.10, the down payment of $2,000 left a remaining balance of $25,494.10. Thereafter, the string of 20 quarterly payments at $1,845.78 results in a negative cash flow through the 13th payment, with a positive cash flow of $346.82 occurring in the 14th payment. On the occasion of the 20th payment, a total positive cash flow of $11,-421.50 occurs, resulting in an internal rate of return or effective annual interest rate

of 17.525% on the overall transaction between the parties.[1]

(b) Using interest amortization tables, the quarterly payment required to amortize a $1,000 loan at 15.25% for 5 years is $72.37. Jack C. Estes, *Interest Amortization Tables* (1976). There are 25.4941 units of one thousand in $25,494.10. Rounding the quarterly payment per $1,000 to $72.40 and multiplying by 25.4941 reveals that a quarterly payment of $1,845.7728 (or $1,845.78) is required to amortize a loan of $25,494.10 at 15.25% for 5 years. These figures are indicative of a sale at $27,-494.10 with a down payment of $2,000 and the remaining balance financed at 15.25% for 5 years.

12. No option granting lessee the right to purchase the equipment at the termination of the lease period is contained in the agreement.

(a) Because of discussions with the representative(s) of Sure Data Systems, Charles Wetsel believed defendants would own the equipment without being required to pay any additional consideration at the end of the lease term.

(b) Upon completion of the string of 20 payments by defendants, plaintiff expected to sell the equipment to any prospective buyer (including the lessee) for an estimated "residual" or fair market value of $2,700.

13. Under the terms of the agreement:

(a) all warranties are disclaimed by the lessor;

(b) all right, title, and interest in the equipment remains with the lessor, except the right to possession and use;

(c) all risks of maintenance, loss, and liability of any nature are on the lessee;

(d) all costs related to the equipment (including license fees, registration fees, assessments and taxes) are on the lessee;

(e) the lessor has the right to collect a reasonable late charge of up to ten percent

---

1. See Exhibit A.

whenever a rental payment remains unpaid for more than ten days beyond its due date;

(f) the lessee is unconditionally liable for the payment of the entire amount due;

(g) the agreement may not be cancelled or terminated by the lessee except for non-performance by the lessor;

(h) the remedies available to the lessor upon default by the lessee include the right to accelerate the entire amount of rent due, and the right to take possession of the equipment for subsequent sale or lease, applying the proceeds therefrom to the amount due;

(i) the lessee must keep the equipment insured at its replacement cost (new) with insurance proceeds payable to lessor; and,

(j) the lessee is obligated to return the equipment in good repair (less normal wear and tear) to the lessor at the expiration of the lease term.

14. Sure Data Systems delivered the computer equipment in its own van to defendants' place of business.

15. Defendants made payments in accordance with the agreement through June 30, 1981, in the total amount of $16,766.24 leaving a balance due of $22,149.36.

16. Defendants paid all personal property taxes themselves, although the agreement provides that all required personal property tax returns relating to the equipment are to be filed by the lessor.

17. On September 3, 1981, Oma Mae Wetsel wrote a letter to plaintiff stating the intent of Farmers Equipment Company to terminate the lease and requesting that plaintiff remove the equipment prior to the September 30, 1981, due date of the "next lease payment".

18. On September 17, 1981, plaintiff notified each defendant by certified mail that its right to accelerate all payments pursuant to paragraph 14 of the agreement was thereby exercised and demand was made for an outstanding balance of $26,573.38 composed of the following charges:

| | |
|---|---|
| gross balance | $22,149.50 |
| use tax | 885.98 |
| accrued late charges | 837.84 |
| residual | 2,700.00 |

19. The equipment was picked up by Sure Data Systems acting on behalf of plaintiff on or about September 25, 1981.

20. Plaintiff's usual business practice is to send notice of sale to the debtor after repossession of goods, although plaintiff can show no evidence that such routine was followed in the instant case and defendants maintain no such notice was received.

21. Upon repossession of the equipment, plaintiff obtained three bids for its purchase and accepted Sure Data System's high bid of $6,950.

22. On January 8, 1982, Sure Data Systems forwarded its check to plaintiff in the amount of $6,596.50 representing its payment of $6,950.00 for the equipment less its charge of $353.50 for picking up the system in Oklahoma.

*Conclusions of Law*

1. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the parties are of diverse citizenship and the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs.

2. Venue is correct pursuant to 28 U.S.C. § 1391(a).

3. The agreement executed by the parties in the instant action was a lease intended as security. There was a buyer-seller relationship between Sure Data Systems and defendants with a security interest in plaintiff, who merely provided the funds for the purchase of the equipment. *Citicorp, supra*, at 518.

(a) Although an option to purchase the equipment upon the expiration of the lease term is not included within the provisions of the agreement, the agreement is deemed one intended as security because the facts in this case indicate economic realities which tend to confirm that a secured transfer of ownership has occurred. *In re Fashion Optical, supra*, at 1389.

■ (b) Upon expiration of the lease term, the equipment would be available for purchase by any prospective buyer (including the defendants) upon the payment of $2,700. This figure is 9.8% of the amount plaintiff paid Sure Data Systems for the equipment and 6.9% of the total rental payments due under the agreement. When the purchase option price is less than 25% of list price, the consideration is deemed nominal. *In re Fashion Optical, supra,* at 1390, *citing Percival, supra,* 532 F.2d at 171. Where there is an agreement allowing the lessee to become full owner at expiration of the lease term without payment of additional consideration or by payment of nominal consideration, the lease is one intended for security. Title 12A Oklahoma Statutes, § 1–201(37)(b).

■ (c) The lessee has no right to terminate the agreement and is unconditionally liable for the entire amount of payments due. *Citicorp, supra,* at 515.

(d) All personal property in Oklahoma is subject to ad valorem taxation. Title 68 Oklahoma Statutes, § 2404. The property must be listed for taxation by its owner or the owner's duly authorized agent. Title 68 Oklahoma Statutes, § 2426. Defendants acted as owner in the payment of personal property taxes assessed on this equipment.

(e) Upon expiration of the lease term, the lessee would have paid $38,915.60; the equivalent of the cost of the equipment ($27,494.10) plus interest at the rate of 15.25% ($11,421.50).

(f) Plaintiff neither selected the equipment, manufactured it, nor made any representations with respect to its function. *Citicorp, supra,* at 518.

4. Other factors, present in the instant case, which are "generally considered to indicate that an agreement is in substance a secured installment sale clothed in lease terminology," *United States v. Federal Ins. Co., supra,* at 1052–53, include:

(a) the risk of· loss or damage is on the lessee;

(b) the lessee is to pay for taxes, repairs and maintenance;

(c) there are termination and default provisions governing acceleration and resale;

(d) the equipment was selected from a third party by the lessee;

(e) the lessor lacks facilities to store or retake the goods; and

(f) warranties normally found in a lease are excluded.

5. Reservation of title by plaintiff was primarily for the purpose of securing the tax advantages available to the parties for the depreciation and leasing, respectively, of the equipment.

■ 6. The provisions of Article 9 apply to a lease intended as security, 12A O.S. § 9–102, and are therefore applicable to the transaction in this case.

7. Upon repossession and sale of the equipment, plaintiff must apply the proceeds of the sale to the accelerated payments in accordance with the agreement and 12A O.S. § 9–504(1); and plaintiff may look to defendants for any deficiency, Lease agreement at ¶ 14; 12A O.S. § 9–504(2).

■ 8. The defendants did not receive reasonable notice of the time after which a private sale of the equipment would take place as required by 12A O.S. § 9–504(3).

(a) However, noncompliance with the notice provisions of the statute does not require forfeiture of the creditor's right to a deficiency judgment. *Beneficial Finance Co. v. Young,* 612 P.2d 1357, 1359–60 (Okl. 1980); *see also* Meyers, *A Nagging Commercial Law Problem Is Solved,* 51 Okla. B.J. 1605 (1980);

(b) Defendants have the right to recover any loss caused by plaintiff's failure to comply with the requirement as to notice. 12A O.S. § 9–507(1); *Davidson v. First Bank & Trust Co., Yale,* 609 P.2d 1259, 1261–62 (Okl.1976). No evidence of loss caused by failure of defendants to receive notice of the time after which private sale

of the equipment would take place has been shown in the instant action.

9. Prior to the time of default, defendants made a downpayment of $2,000 and 8 payments of $1,845.78 each for a total amount of $16,766.24; leaving a balance of $22,149.36 due under the agreement.

10. Seven payments of $1,845.78 (a total of $12,920.46) became due between September 30, 1981, and March 30, 1983. At an interest rate of 15.25% plaintiff is entitled to the present value of these payments in the amount of $14,495.80.[2] 15 O.S. § 275.

11. Five payments of $1,845.78 (a total of $9,228.90) remain due after March 30, 1983, through the end of the rental term on June 30, 1984. At an interest rate of 15.25% plaintiff is entitled to these payments reduced to their present value of $8,260.55.[2] Plaintiff is not entitled to that portion of the unpaid rentals after judgment which represents unearned interest. *Citicorp, supra,* at 518.

12. Plaintiff received $6,596.50 from Sure Data Systems as the net proceeds from the sale of the equipment on or about January 8, 1983 ($6,950.00 paid for the equipment less $353.50 charge for repossessing). Defendants are entitled to a credit from this sale increased to present value by an interest rate of 15.25% in the amount of $7,845.74.[2]

13. Plaintiff advised defendants by letter of September 17, 1981, that accrued

late charges amounted to $837.84 and may recover that amount.

14. There is no provision in the existing agreement allowing the plaintiffs to charge defendants the projected $2,700 "residual" or fair market value of the equipment upon the expiration of the lease; therefore, plaintiff may not recover that amount.

15. Defendants paid all personal property taxes themselves; therefore, plaintiff may not recover the amount of $1,028 claimed as "estimated property tax."

16. In view of the foregoing, the court finds and concludes that plaintiff, Equico Lessors, Inc., is entitled to a judgment in its favor and against all of the defendants in the amount of $16,103.80 based on the following:

| | |
|---|---:|
| Present value of quarterly payments unpaid through 3/30/83 | $ 14,495.80 |
| Present value of quarterly payments due after 3/30/83 | 8,260.55 |
| Delinquent use tax | 355.35 |
| Accrued late charges | 837.84 |
| | $ 23,949.54 |
| Less credit to defendants for present value of proceeds from sale of equipment on 1/8/82 | (7,845.74) |
| TOTAL JUDGMENT FOR PLAINTIFF | $ 16,103.80 |

The clerk of the court is instructed to mail copies hereof to counsel and/or parties of record.

---

**2.** See computer sheet attached at Exhibit B.

## EXHIBIT A

8.00

### COMPUTER LEASE

### * INTERNAL RATE OF RETURN ANALYSIS *

| -DATE- | CASH FLOW | CUMULATIVE CASH FLOW | * | DAY # |
|--------|-----------|----------------------|---|-------|
| 8-30-79 | -25,494.10 | -25,494.10 | | 0 |
| 9-30-79 | 1,845.78 | -23,648.32 | | 31 |
| 12-30-79 | 1,845.78 | -21,802.54 | | 122 |
| 3-30-80 | 1,845.78 | -19,956.76 | | 213 |
| 6-30-80 | 1,845.78 | -18,110.98 | | 305 |
| 9-30-80 | 1,845.78 | -16,265.20 | | 397 |
| 12-30-80 | 1,845.78 | -14,419.42 | | 488 |
| 3-30-81 | 1,845.78 | -12,573.64 | | 578 |
| 6-30-81 | 1,845.78 | -10,727.86 | | 670 |
| 9-30-81 | 1,845.78 | -8,882.08 | | 762 |
| 12-30-81 | 1,845.78 | -7,036.30 | | 853 |
| 3-30-82 | 1,845.78 | -5,190.52 | | 943 |
| 6-30-82 | 1,845.78 | -3,344.74 | | 1,035 |
| 9-30-82 | 1,845.78 | -1,498.96 | | 1,127 |
| 12-30-82 | 1,845.78 | 346.82 | * | 1,218 |
| 3-30-83 | 1,845.78 | 2,192.60 | | 1,308 |
| 6-30-83 | 1,845.78 | 4,038.38 | | 1,400 |
| 9-30-83 | 1,845.78 | 5,884.16 | | 1,492 |
| 12-30-83 | 1,845.78 | 7,729.94 | | 1,583 |
| 3-30-84 | 1,845.78 | 9,575.72 | | 1,674 |
| 6-30-84 | 1,845.78 | 11,421.50 | | 1,766 |

* NUMBER OF REVERSALS IN CUMULATIVE CASH FLOW= 1

### RESULTS

CASH FLOWS FROM: 8-30-79
TO: 6-30-84

EFFECTIVE ANNUAL INTEREST RATE = 17.525 %

SUM OF POSITIVE FLOWS = 36,915.60
SUM OF NEGATIVE FLOWS = -25,494.10
SUM OF ALL FLOWS = 11,421.50

DAILY INTEREST RATE = 4.42204883E-04

5 ITERATIONS

## EXHIBIT B

# P R E S E N T V A L U E O F U N P A I D P A Y M E N T S

FORMULAE USED:

FOR QUARTERLY PAYMENTS = $A*(((1+I)^N)-1)/I)$
DUE THROUGH 3/30/83

WHERE:I=INTEREST PER PERIOD= .038125
N=NUMBER OF PAYMENTS PRIOR TO 3/30/83 = 7
A=AMOUNT OF QUARTERLY PAYMENT = 1845.78

FOR QUARTERLY PAYMENTS = $A*(1-((1+I)^{(-N)}))/I)$
DUE AFTER 3/30/83

WHERE:I=INTEREST PER PERIOD= .038125
N=NUMBER OF PAYMENTS AFTER 3/30/83 = 5
A=AMOUNT OF QUARTERLY PAYMENT = 1845.78

FOR SALVAGE VALUE AT END OF LEASE = $A/((1+I)^N)$

WHERE:I=INTEREST PER YEAR = .1525
N=PERIOD OF TIME AFTER 3/30/83 =442 DAYS/365= 1.2109589041
A=AMOUNT OF SALVAGE VALUE = 0 YEARS

FOR SALVAGE VALUE AT
TIME OF SALE = $A*((1+I)^N)$

WHERE:I=INTEREST PER YEAR = .1525
N=PERIOD OF TIME TO 3/30/83=446 DAYS/365= 1.2219178082
A=AMOUNT OF SALVAGE VALUE = 6596.5 YEARS

PRESENT VALUE OF
QUARTERLY PAYMENTS = 14495.80
UNPAID THROUGH 3/30/83

PRESENT VALUE OF
QUARTERLY PAYMENTS = 8260.55
DUE AFTER 3/30/83

PRESENT VALUE OF SALVAGE VALUE
AT END OF LEASE = 0.00
 ------------
SUM OF PRESENT VALUES= 22756.35

LESS CREDIT FOR PRESENT VALUE OF
SALVAGE VALUE AT TIME OF SALE = 7845.74
 ------------
SUM OF SETTLEMENT = 14910.61