**In re John M. NOVACK, Debtor.**

**John M. NOVACK,**

**v.**

**BUSINESS CREDIT LEASING, INC., Defendants.**

**Bankruptcy No. 86–02595–C.**
**Adv. No. 86–0794–C.**

United States Bankruptcy Court, N.D. Oklahoma.

July 19, 1988.

Jarboe, Keefer & Swinson, Sidney K. Swinson, Tulsa, Okl., for plaintiff.

Ira C. Selkowitz, Denver, Colo., for defendants.

MEMORANDUM OPINION
and DECISION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter comes on for hearing upon stipulated facts. The court finds that the instant action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(k) and that jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1334 and 1409(a), respectively.

The court makes the following findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

## Findings of Fact

The captioned bankruptcy case was instituted by the filing of a voluntary petition for relief under chapter 11· of the United States Bankruptcy Code on October 6, 1986, at which time an order for relief was entered by this court.

On the date of filing his bankruptcy petition and to date, plaintiff has been is in possession of the following equipment: a Sharp 900 copier, a Sharp 461 automatic feeder, a Sharp 430 sorter, a Sharp 402 sheet cassette and a Sharp cabinet.

The plaintiff acquired this equipment from the defendant, Business Credit Leasing, Inc., pursuant to a written agreement dated March 9, 1984, which is attached to the plaintiff's adversary complaint.

The defendant has filed no financing statements concerning the subject equipment. The agreement called for thirty-six monthly rental payments in the amount of $254.81 and, at the end of the lease term, the equipment would revert to the defendant, the "lessee" having no option to purchase the equipment. During the term of the "lease", the "lease" could not be cancelled.

The agreement provided that the terms of the "lease" were governed by the laws of the state of Minnesota.

The debtor asserts that the lease was actually intended as security for the purchase of the equipment, and thereby seeks to avoid the defendant's interest in the subject equipment, asserting that the defendant's interest is unperfected and therefore inferior to the interest of the debtor in possession pursuant to 11 U.S.C. § 544(a) and 12A O.S.A. § 9–301(1)(b).

## Conclusions of Law

■ The written agreement between Novack and Business Credit Leasing provides that the agreement shall be governed and construed in accordance with Minnesota law. The agreement was, however, executed in Colorado and the equipment was delivered to the lessee at a Colorado address, and was presumably located in Colorado. Therefore, our threshhold inquiry is whether the laws of the state of Minnesota, Colorado, or Oklahoma govern the substantive issues raised in the parties' briefs.

In order to determine the applicable law in this action, we look to the choice of law rules of the forum state, Oklahoma. Oklahoma courts recognize that parties to a contract may generally agree that the contract shall be governed by the laws of a chosen state, provided some element of the contract is properly referable to that state. Section 1–105 of Oklahoma's version of the Uniform Commercial Code codifies this principle while subjecting it to specific limitations. One such limitation is found at § 9–102 of the Oklahoma Uniform Commercial Code, which provides that article 9 thereof shall apply to any transaction intended to create a security interest in personal property located in Oklahoma. A "lease intended as security" is one type of security interest included in § 9–102. Thus, under § 1–105 of the Oklahoma Uniform Commercial Code, parties to a transaction are generally free to choose which state's law shall govern disputes arising from that transaction unless, among other things, the dispute falls within the scope of § 9–102.

The application of Minnesota law to determine whether a security interest existed here would thus violate a fundamental purpose of article 9: to create commercial certainty and predictability by allowing third party creditors to rely on the specific perfection and priority rules which govern the scope of article 9. Since the rights of third parties are at stake in the instant action, namely the debtor-in-possession, this court concludes that an Oklahoma court would apply Oklahoma law to determine the scope of article 9 of the Oklahoma Uniform Commercial Code.

■ Thus, an agreement which is purportedly "intended" as security is to be decided according to "the facts of each case." *See* Okla.Stat.Ann. tit. 12A § 1–201(37); *In re Breece*, 58 B.R. 379 (Bankr.N.D.Okla.1986).

In the case of *Steele v. Gebetsberger (In re Fashion Optical, Ltd.)*, 653 F.2d 1385, 1388 (10th Cir.1981), the Court of Appeals

for the Tenth Circuit established a four step approach for determining whether a lease is intended as security from which a two part analysis can be discerned: A transaction purporting to be a lease will be deemed a secured transfer of ownership if 1) "a purchase option exists and it or other items in the 'lease' permit the 'lessee' to become full owner by merely paying no or nominal consideration after complying with its terms" or 2) "the facts otherwise expose economic realities tending to confirm that a secured transfer of ownership is afoot." *Id.*

Because the agreement in the instant transaction lacks a purchase option, the first test is inapplicable to the instant case. To determine the nature of the document, therefore, the second of the two tests of *Fashion Optical* must be utilized.

The leading case in the Tenth Circuit which analyzed the second of the two tests of *Fashion Optical* is *Adelman, Trustee v. General Mtrs. Acceptance Corp. (In re Tulsa Port Warehouse Co., Inc.),* 690 F.2d 809 (10th Cir.1982). The *Tulsa Port* case involved four written agreements whereby the debtor acquired possession and use of four motor vehicles. When the debtor filed for bankruptcy, the prior right to the vehicles was contested by the trustee, who asserted that the debtor had purchased the vehicles and that any security interest obtained by the lessor was unperfected while the purported lessor asserted that the debtor was merely a lessee of the vehicles.

The four agreements were copies of a standard form which contained no purchase option but the court held that the transactions were not true leases but were, instead, sales. The court held that the economic realities tended to confirm that a secured transfer of ownership was "afoot."

The *Tulsa Port* lease form provided that title to each vehicle remained in the lessor. In the instant case, at paragraph 20 of the lease, the ownership of the property also remains in the lessor. In *Tulsa Port,* the lessee was required to assume all expenses for maintenance and repair, fees and liabilities for operation and risk of loss, and in addition, to pay all applicable taxes im-posed or levied upon the equipment. Those same expenses are borne by the lessee in the instant case.

The significant difference between *Tulsa Port* and the instant action is the type of agreement made between the parties. In *Tulsa Port,* the parties selected an "open end" type of lease whereas in the instant case, the lease is a "closed end" lease. An "open end" lease, as found in *Tulsa Port,* calls for certain reciprocal obligations to continue after the expiration of the fixed term. In a "closed end" lease, as in the instant case, no obligations remain between the parties after the termination of the lease agreement except delivery of the equipment by the lessee, at the lessee's expense, to the lessor.

The debtor argues that the termination provisions of the lease provide that if the lease terminates because all necessary payments have been made, as described in paragraph one of the lease, the equipment is not to be surrendered to the lessor, but rather, it becomes the property of the lessee to do with as he pleases. The court finds this construction of the lease to be in error. Although termination of the lease is not described in paragraph one of the lease, the term of the contract is specifically stated. Reading paragraph one in conjunction with the termination provisions as found in paragraph 18 of the lease, leads to the inevitable conclusion that the lessee, upon the expiration of the term of the lease, is obligated to return the equipment to the lessor. This conclusion is given more emphasis by paragraph 5, which excludes a purchase option and paragraph 20 which states that "the equipment is and shall at all times remain, the property of" the lessor.

The cases cited by the debtor are distinguishable from the case at bar in that each case involved either an open end lease or a nominal purchase option upon the termination of the lease. *See In re Breece,* 58 B.R. 379 (N.D.Okla.1986) (open end lease); *In re Tulsa Port Warehouse Co., Inc.,* 690 F.2d 809 (10th Cir.1982) (open end lease); *In re Fashion Optical, Ltd.,* 653 F.2d 1385 (10th Cir.1981) (nominal purchase option);

*United States ex rel. Eddie's Sales & Leasing, Inc. v. Federal Ins. Co.,* 634 F.2d 1050 (10th Cir.1980) (oral nominal purchase option); *Equico Lessors, Inc. v. Wetsel,* 576 F.Supp. 13 (W.D.Okla.1983) (representations were made such that the equipment would be owned by the lessee at the end of the lease term); *In re Tucker,* 34 B.R. 257 (W.D.Okla.1983) (verbal option at nominal price was granted to lessee); *Citicorp. Leasing, Inc. v. Allied Institutional Distributors, Inc.,* 454 F.Supp. 511 (W.D.Okla. 1977) (contained a nominal purchase option); *Percival Const. Co. v. Miller & Miller Auctioneers, Inc.,* 387 F.Supp. 882 (W.D.Okla.1972) (nominal purchase option); *Dynalectron Corp. v. Jack Richards Aircraft Co.,* 337 F.Supp. 659 (W.D.Okla.1972) (nominal purchase option).

In the case at bar, this court is faced with a closed end lease without a purchase option. Application of the factors as listed in *In re Tulsa Port Warehouse Co., Inc.,* clearly demonstrates that the instant lease has some of the attributes of a sales contract. The lessee is required to bear the entire risk of loss and pay the taxes imposed upon the equipment; the agreement contains a provision for acceleration of rental payments in the event of default; the agreement excludes all warranties of merchantability and fitness; and the equipment was purchased specifically for the use of the lessee.

The court finds, however, that the determinative factor in the instant case is the effect of the termination provisions which provide for the termination of the lessee's interest at the end of the term. As stated in *Breece,* "If the 'closed end' type [of lease] had been selected, then at the end of the fixed term the vehicle would simply have been returned to lessor, and the obligations of both parties would have been at an end." *Id.* at 384. The lease agreement does not provide the lessee with an option to purchase the equipment at the end of the term and specifically provides that the equipment was at all times the property of the lessor. Lacking a purchase option or the attributes of an open end lease defeats the debtor's argument. A closed end lease without a purchase option provides that

ownership rights remain in the lessor. Those ownership rights are not extinguished simply because the lessee has agreed to undertake certain responsibilities.

IT IS THEREFORE ORDERED that the debtor shall immediately transfer the Sharp 900 copier and related equipment to the defendant at debtor's cost.