**In re ZERKLE TRUCKING COMPANY, Debtor.**

**Bankruptcy No. 91–30086.**

United States Bankruptcy Court,
S.D. West Virginia.

Oct. 7, 1991.

Ralph Hoyer and Stephen Hoyer of Hoyer, Hoyer & Smith, Charleston, W.Va., for debtor.

Douglas McElwee of Robinson & McElwee, Charleston, W.Va., for Paccar Financial Corp.

OPINION AND ORDER FINDING LEASE AGREEMENTS TO BE INTENDED AS SECURITY AGREEMENTS AND DENYING PACCAR FINANCIAL CORPORATION'S MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT UNEXPIRED LEASES

RONALD G. PEARSON, Bankruptcy Judge.

The Court is asked to decide whether equipment lease agreements with terminal rent adjustment clauses [TRAC leases] are true leases or leases intended for security. If they are true leases, the Debtor, Zerkle Trucking Company [Zerkle], must assume the leases and pay according to the agreements or reject the leases, return the equipment and pay damages. The Court finds the agreements to be intended as security agreements and not true leases.

### The Agreements

Before Zerkle filed a Chapter 11 bankruptcy petition, Paccar, as lessor, and Zerkle, as lessee, entered into six equipment lease agreements, each having 60–month terms, pertaining to ten tractors and seventy trailers. One trailer was damaged and Paccar has been paid for its loss. The tractors are titled in West Virginia and the trailers are titled in Tennessee. Postpetition, Zerkle has retained possession of the equipment and is using it in the ordinary course of business. No postpetition payments have been made to Paccar and this Opinion makes no finding as to whether and what postpetition payments are due. Paccar filed a motion to compel the Debtor to assume or reject the leases. Zerkle argued that the lease agreements are leases intended as security agreements. The Court heard arguments, requested memoranda of law from the parties, and took the matter under advisement.

The leases, all identical, provide that title to the equipment shall remain in Paccar; the lessee shall protect and defend title against liens and encumbrances; Zerkle acknowledges that Paccar is owner of the equipment for income tax purposes; Zerkle bears the risk of loss or destruction of the equipment and if the equipment is lost, stolen or damaged beyond repair, Zerkle is to pay Paccar an amount according to a pre-established casualty value schedule plus all accrued unpaid rent; Zerkle is to pay the costs of title registration, maintenance, repairs, insurance, licenses, permits and taxes; Zerkle may not modify, assign, transfer or sublet the equipment without Paccar's written permission; Paccar may sell or grant a security interest in the equipment without notice to or consent of Zerkle; Zerkle assumes liability for and generally indemnifies and holds Paccar harmless from all actions, suits, liabilities, obligations and claims resulting from the manufacture, use, ownership, etc. of the equipment; manufacturers' and sellers' warranties are assigned by Paccar to Zerkle; Zerkle is to pay a security deposit to Paccar, which is refunded without interest at the end of the lease term if Zerkle complies with all terms of the agreement.

The leases also provide that should the Internal Revenue Service Code be amended in such a way as to impair Paccar's tax benefits under the agreement, Zerkle shall pay additional rent to compensate Paccar for the lost tax benefits.

At the end of a rental term, Zerkle must return the equipment to Paccar. The terminal rental adjustment clauses provide that at the termination of the leases, the rental price on each piece of equipment is adjusted upward or downward by reference to amounts realized on sale or final disposition of the equipment. If the equipment is purchased by Zerkle or a third party for more than a pre-set, predicted residual value (20%), then the excess over the predicted residual value is refunded to Zerkle. If the sale or final disposition of the equipment is for less than the predicted residual value, Zerkle must pay the deficiency to Paccar as increased rent.

In the event of default by Zerkle before the end of the lease periods, Zerkle is liable to Paccar for amounts established according to Casualty and Termination Schedules. These schedules require payments of percentages of the original cost of the equipment, with the percentages declining from approximately 98.7 per cent to 21 per cent over a five-year lease term. In the event that Paccar should sell or re-lease equipment following default by Zerkle, the leases provide that net proceeds from the sale or release, attributable to Zerkle's interest in the equipment, is to be credited against Zerkle's.

### Governing Law

Both parties agree that four of the leases are governed by Ohio law and two by West Virginia law. Zerkle asserts that the issue of controlling law is moot because the statutory definition of a security interest is the same in both states. Neither state has a defined test to identify whether an agreement is a lease or a security agreement. The relevant statutory language is as follows:

> Unless a lease or consignment is intended as security, reservation of title thereunder is not a security interest,.... Whether a lease ... is intended as security is to be determined by the facts of each case, except that (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Ohio Rev.Code § 1301.01(KK).

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal

---

consideration does make the lease one intended for security. W.Va.Code § 46–1–201(37).

Ohio case law requires the court to examine all relevant factors surrounding a lease agreement and the relationships created by it when determining the nature of the agreement. *In re Victoria Hardwood Lumber Co., Inc.*, 95 B.R. 954, 959 (Bankr. S.D.Ohio 1988), *citing Sight and Sound of Ohio, Inc. v. Wright*, 36 B.R. 885, 39 U.C.C. Rep. 990, 994 (S.D.Ohio 1983). In deciding under West Virginia law, this Court is required to analyze the intent of the parties from the facts gleaned from the case. *Leasing Service Corp. v. Eastern Equipment Co. (In re Eastern Equipment Co.)*, 11 B.R. 732 (Bankr.S.D.W.Va.1981). In both states, further inquiry is not required if the lessee may purchase the equipment at the end of the lease term for no consideration or nominal consideration.

Paccar argues that the provision requiring Zerkle to return the equipment at the end of the lease terms with options to purchase at the fair market value clearly set a purchase price higher than a nominal amount.

Zerkle argues that an analysis of whether the purchase option is nominal or not nominal is irrelevant because under the terms of the leases, no real purchase option is afforded to Zerkle; that the terms of the TRAC supplement require Zerkle to pay a pre-established residual value and, consequently, the capitalized cost of the equipment; and that the written option is illusory because Zerkle must pay Paccar the residual value and is entitled to any excess over that value realized on sale of the equipment. Thus, Zerkle argues that it bears the risk to equity in the transactions.

Intended as Security as a Matter of Law

■ The practical effect of the TRAC provisions is that upon compliance with the terms of the leases, Zerkle shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration beyond that which Zerkle has guaranteed to pay to Paccar. While the plain language of the leases requires the equipment to be returned to Paccar at the end of the terms, a sale occurring to a third party at the end of a term is in the nature of a sale by Zerkle, since Zerkle is required to guarantee to Paccar the purchase price of the equipment. Zerkle reaps the benefit or suffers the loss if the property sells for more or less than the pre-established residual value which Zerkle has guaranteed. Zerkle becomes obligated for the full value of the equipment at the signing of the lease. The total consideration to be paid by Zerkle and guaranteed by Zerkle includes the lease term amount and the amount of the residual value. The purchase option in the lease merely gives Zerkle the tools to enforce its formidable position of "total responsibility" for these assets.

Should Zerkle elect to purchase the equipment at the end of a lease term and not have it sold to a third party, Zerkle pays no more than the amount for which it became responsible at the time the lease was executed. The return of the property to Paccar is in form only, and not in substance.

The leases with TRAC supplements are leases intended for security as a matter of law, because upon compliance with the terms of the leases Zerkle shall become or has the option of becoming the owner of the leased property for no additional consideration beyond that for which it was liable at the execution of the lease.

If the leases were not intended for security as a matter of law pursuant to the statutory provisions in both Ohio and West Virginia, an examination of all relevant factors, including the intent of the parties, would lead the Court to the same conclusion.

Indicia of Ownership

■ Where the nature of a lease cannot be determined as a matter of law, a recognized problem which arises in trying to determine whether agreements are true leases or are leases intended for security is that many of the factors consistent with security agreements are also consistent with true lease transactions. Terminology and labels used in self-proclaimed lease

agreements are not determinative of the true nature of the agreement. The Court assigns little weight to the fact that the agreements under consideration are entitled equipment lease agreements and that the parties are identified as lessor and lessee. In deciding whether an agreement is a lease intended for security, the Court will examine indicia of ownership as they have been defined by the parties to the agreements, giving most weight to those factors determinative of which party bears the potential for gain or loss associated with physical obsolescence, technological obsolescence and general market conditions.

Among the provisions which are consistent with, but not determinative of, the agreements being true leases are that titles remain in Paccar's name; the lessee protects titles against liens and encumbrances; Paccar receives the tax benefits of depreciation; Paccar may sell or grant a security interest in the equipment; Zerkle may not modify, assign, transfer or sublet the equipment without Paccar's approval; Zerkle pays refundable security deposits; the equipment is to bear signs identifying Paccar as the owner; the agreement limits Zerkle's use of the equipment; and Zerkle must return the equipment to Paccar at the end of the lease terms.

Among provisions which are consistent with, but not determinative of, the agreements being intended for security are that Zerkle bears the risk of loss or destruction and must pay for the equipment if it is damaged beyond repair; manufacturers' and sellers' warranties are assigned to Zerkle; Zerkle pays the costs of all taxes, insurance, licenses, title registration, permits, maintenance and repair; and Zerkle guarantees the equipment will be worth twenty per cent of its original value at the end of the lease term.

Paccar asserts that the TRAC provisions are consistent with true leases. If Zerkle does not exercise its purchase option, Paccar can sell the equipment to a third party. Paccar argues that because Zerkle has possession of the equipment, Zerkle determines its ultimate fair market value by the manner of its use, maintenance and repair.

If the fair market value is less than the residual value specified to be paid to Paccar, Paccar is then compensated for excessive wear and tear on the equipment. The Court agrees that Zerkle's actions largely determine deterioration or physical obsolescence of the equipment, but Zerkle's actions have no effect on the functional obsolescence or other market conditions which would affect the end-of-term sale prices for the equipment, and which would affect Zerkle's economic risk of loss or gain beyond the monthly rental required by the agreement.

Factors Under Amended U.C.C.

Paccar relies on an unpublished decision under Oklahoma law in which a bankruptcy court found a lease with TRAC supplement, identical to the ones now being considered here, to be a true lease. *Chaparral Equipment Leasing & Rental, Inc. v. Paccar Financial Corp. (In re Chaparral Equipment Leasing and Rental, Inc.),* Chap. 11 Case No. 90–70224, Adv. No. 90–7043 (Bankr.E.D.Okla. June 18, 1990). The *Chaparral* court concluded that the lease was a "closed end" lease with a definite term and duration and an option to purchase at its expiration, with no provision for the lessee to bear the risk of depreciation. The *Chaparral* court is correct in its finding that the termination value schedule provisions preclude the lessee from having a unilateral right to terminate prior to expiration of the term, because, to so terminate, the lessee must in reality pay damages for default in amounts assuring the lessor of the full value of the lease. The termination value schedule sets declining values to be paid on premature termination as the lease term progresses and assures the lessor it will receive the total purchase price of the equipment. The *Chaparral* court wrongly decides that the lessor bears the risk of depreciation.

Because Oklahoma has adopted the 1987 amendments to the Uniform Commercial Code, and Ohio and West Virginia have not, Oklahoma's statutes gave additional guidance to the *Chaparral* court on what constitutes a security agreement and eliminated several factors as being determinative.

The provisions are not binding on this Court, but are instructive. Relevant parts of the amended U.C.C. § 1–201(37) are:

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

(c) the lessee has an option to renew the lease or to become the owner of the goods,

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

For purposes of this subsection (37)

(x) Additional consideration is not nominal if ... (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed.

U.C.C. § 1–201(37) (1987).

The amended U.C.C. provisions still leave room for debate over the nature of agreements such as these between Paccar and Zerkle. While the equipment lease agreements are not clearly security agreements under the amended version, neither are they eliminated from being security agreements by the new language. Deciding under the amended version, a court would be left in the same situation as if it were deciding under the older version adopted by West Virginia and Ohio, and would still be forced to reach a decision by consideration of all the facts in the case.

Courts being guided by the amended UCC § 1–201(37) have considered whether the lessor retains a meaningful residual interest, the lessor's lack of such an interest at the end of the lease term being indicative of a security agreement. Necessarily inherent in this approach is a consideration of whether and to what extent the lessee gains equity in the property. An agreement under which the lessee gains no equity is considered consistent with a true lease. *Basic Leasing, Inc. v. Paccar, Inc.*, 1991 WL 117412 (D.N.J. June 24, 1991); *Bonczek v. Pascoe Equipment Co.*, 450 A.2d 75, 304 Pa.Super. 11 (1982). Because the TRAC supplement provides that Paccor receives only the pre-determined residual interest, and is guaranteed of receiving this amount, the lessee, Zerkle, bears the risk of greater physical depreciation than estimated and reaps the reward if physical

depreciation is less than estimated at the creation of the lease. *In re Tulsa Port Warehouse Co., Inc.*, 690 F.2d 809 (10th Cir.1982). Zerkle also risks the loss or reaps the benefit if technological improvements, competition from alternate forms of transportation, strikes in the trucking industry, economic recession, increased demand or a multitude of other market factors cause the equipment to sell for more or less than the estimated residual value at the end of the lease term. Should there be increased demand causing the equipment to sell at a price higher than anticipated by the agreement, Zerkle's retroactive reduction in rent over the five-year term of the lease would have the same effect of Zerkle's having acquired equity in the equipment.

Intended To Have Effect As A Security

■ The essence of the Bankruptcy Code is to require equal treatment of similar claims and to permit all creditors of equal status to share in the assets of the debtor according to the priorities established by the Code. The Code's mandate requires that for the purpose of deciding whether a lease agreement is intended for security in the context of a debtor's assertion that the claim should be treated under 11 U.S.C. § 506, the court must consider the nature of the business relationship established by the lease agreement and how that relationship compares to business relationships established by agreements which are clearly grants of security interests and those which are clearly true leases. In a true lease, the lessor has not parted with title. It was the retention of title under the common law that established the lessor's entitlement to protection against the lessee's creditors and trustee in bankruptcy. 1 G. Gilmore, *Security Interest in Personal Property* § 3.6, at 76 (1975).

The lease agreement provides that Zerkle will bear the risk if the Internal Revenue Service Code is amended to reduce the planned after-tax benefit which Paccar will receive under the agreement. Lease paragraph 23. While Congress, speaking through the IRS Code, has declared that TRAC leases are true leases for tax purposes, the fact that Congress had to make such a clarification is further proof that TRAC leases are subject to being interpreted as something other than true leases.

A simple numerical tabulation of the burdens and privileges of ownership allocated under the agreements reveals clearly that the majority of the indications of ownership rest with Zerkle. In event of either default or completion of the lease term, Paccar relies on agreement provisions which guarantee the full payment of the cost of the equipment plus an undisclosed profit. It is Paccar's guarantee of receiving the full cost of the equipment plus its anticipated profit that establishes Paccar's relationship with Zerkle to be analogous to that of a secured creditor with its debtor. While almost no ownership burdens fall on Paccar, neither does Paccar retain for itself many of the privileges of ownership beyond those which guarantee Paccar an exact, pre-calculated return on its investment. Such a guaranteed return with no up-side potential for profit confirms the nature of Paccar's relationship with Zerkle as a financing arrangement with security and not a lease arrangement where the lessor charges a monthly sum for the lessee's use and possession of the property, where the lessor expects damages for default based on loss of rental revenue instead of the cost of the rental equipment, and where the lessor retains some entrepreneurial risk to equity inherent in the business venture. As discussed earlier in this Opinion, Zerkle is allocated the risk to equity by its agreements with Paccar.

■ While the amended version of the U.C.C., under which the *Chaparral* case was decided, states that a transaction does not create a security interest merely because it provides that the lessee has an option to become the owner of the goods for a fixed price equal to or greater than the reasonably predicted fair market value at the time the option is performed, this agreement provision is still to be considered in weighing all the facts relevant to agreements being evaluated by courts where the statutes do not definitively iden-

tify the documents in question as security agreements or true leases.

Considering all the foregoing factors under applicable non-bankruptcy law, where the test is whether the transaction was intended to have effect as a security, the Court finds that for the purpose of establishing whether they are leases subject to 11 U.S.C. § 365 or agreements intended for security subject to 11 U.S.C. § 506, the TRAC leases between Zerkle and Paccar establish relationships between the parties analogous to the relationship between an owner of goods and a creditor who holds a secured interest in those goods. The Court further finds that the lease agreements were intended to have effect as security agreements instead of true leases. It is accordingly

ORDERED that the motion of Paccar Financial Corporation to compel Zerkle Trucking Company to assume or reject unexpired leases is denied.

ORDERED that the lease of Paccar being found a lease intended for security, Zerkle is required to treat Paccar as secured by the equipment in question and Paccar is entitled to all rights of a creditor so protected and no more.