**In re Robert Fritz CHARLES, Jan Aloise Charles, Debtors.**

**J. Michael Morris, Trustee, Plaintiff,**

**v.**

**U.S. Bancorp Leasing and Financial, Defendant.**

**Bankruptcy No. 00–13388.**
**Adversary No. 00–5344.**

United States Bankruptcy Court, D. Kansas.

March 29, 2002.

---

**218**

W. Thomas Gilman, Wichita, KS, for Debtors.

J. Michael Morris, Wichita, KS, trustee.

## MEMORANDUM AND OPINION GRANTING SUMMARY JUDGMENT

ROBERT E. NUGENT, Bankruptcy Judge.

This matter is before the Court on the motion of U.S. Bancorp Leasing and Financial ("Bancorp") for summary judgment (the "Motion") on the Trustee's Complaint. In his Complaint, Trustee J. Michael Morris asserts that the arrangement under which Bancorp leased to debtors Robert and Jan Charles five Kenworth truck tractors is a disguised sale rather than a finance lease. The Trustee further argues that, since the transaction is a disguised sale and not a lease, Bancorp was obligated to perfect its security interest in the vehicles in strict compliance with Kan. Stat. Ann. § 84–9–302[1] and Kan. Stat. Ann. § 8–135. After careful consideration of the parties' submissions, the Court concludes that the Trustee's argument fails on both counts and grants summary judgment to Bancorp.

## UNCONTROVERTED FACTS

There is little dispute as to the facts of this case. Debtors Robert Fritz Charles and Jan Aloise Charles filed their chapter 7 case in this Court on August 30, 2000. The Trustee filed this adversary proceeding on November 28, 2000. After written discovery was completed, Bancorp's Motion was filed on October 3, 2001.

On March 1, 2000, debtors signed a Master Lease Agreement with Bancorp pursuant to which they leased five Kenworth truck tractors for a five year period. Debtors also signed a Schedule to Lease Agreement ("Schedule"), a Delivery and Acceptance Certificate ("Certificate"), and a TRAC[2] Lease Addendum ("TRAC Addendum"). Taken together with the Master Lease Agreement, these documents form a memorandum which is the whole agreement of the parties concerning possession, use and return of the vehicles. For convenience, the Court refers to this memorandum the "Lease." Debtors breached the Lease by failing to make required monthly payments and, after the case was filed, Bancorp obtained stay relief, reclaimed the vehicles, and sold them for $285,000.00.

The Lease provided that the debtors were obligated to make all of the payments and that their obligation was not subject to termination. Paragraph 5 of the Master Lease Agreement states "[t]his is a fully net, noncancellable contract of lease which may not be terminated for any reason except as otherwise provided herein." Paragraph 3 of the same document provides that "rental payments are specified in each Schedule." The Schedule references sixty (60) monthly payments of $8,128.64 being due, commencing on April 15, 2000. The TRAC Addendum states "[i]n addition to the rental payments specified, lessor is also entitled to recover a Residual Value equal to $93,198.70 ...."

---

1. Because Charles' case was filed before July 1, 2001, the "old" Article Nine of the Kansas Uniform Commercial Code, Kan. Stat. Ann. § 84–9–101, et seq. (2000 Supp.) applies.

2. "TRAC" is an acronym for "terminal rent adjustment clause," a term of art in the leasing industry which refers to a lease which provides for the adjustment of the rents based on the variance of the value of the leased property from the stated "residual value" in the initial lease agreement. The TRAC clause applicable here is found in the TRAC Addendum.

The parties agree that the debtors duty to pay rent under the Lease is noncancellable.

The parties' rights upon termination are defined in the TRAC Addendum which provides that, at the close of the Lease term, the debtor may opt to (1) acquire the tractors for the amount of the Residual Value, plus a $500 termination fee or (2) not acquire the tractors, in which case the lessee is required to either re-lease the tractors or sell them to the highest bidder. The present value of the payments yielded by the re-letting of the vehicles or the proceeds of their sale is defined as the "Market Value" of the vehicles. If, after deductions for recovery expenses, property taxes, and refurbishing, the Market Value is less than the Residual Value, the lessee would be obligated to make up the difference. On the other hand, if the adjusted Market Value exceeds the Residual Value, the lessee is entitled to the surplus.

A third possible outcome, a holdover, is also possible. If the lessee fails to either return the vehicles or purchase them, Bancorp may at its sole option extend the base lease term for six additional months with the debtors remaining obligated to follow all of the other terms and conditions of the Lease. Debtors would be required to pay six additional months' rent at the stated rate (a total of $48,771.84) and, at the end of the holdover term, would have the same two options outlined above: purchase the vehicles at the Residual Value plus a fee or return the vehicles for disposition and rent adjustment. According to the TRAC Addendum, however, *none* of the holdover rent is credited against the Residual Value or any other lessee obligation.

### STANDARDS ON SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure. Rule 56, in articulating the standard of review for summary judgment motions, provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, and admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Fed. R. Bankr.P. 7056, 9014. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no genuine issue of material fact."[3] In determining whether any genuine issues of material fact exist, the Court must construe the record liberally in favor of the party opposing the summary judgment.[4] However, the opposing party's conclusive allegations are not sufficient to establish an issue of fact and defeat the motion.[5]

### DISCUSSION

■ The Court must determine whether the Lease as a matter of law creates a lease transaction or a security interest. If the Court determines that a security interest is created, it then must consider whether Bancorp has perfected same by showing itself as "owner" rather than as "lienholder" on the certificates of title issued by the Kansas Division of Vehicles for these tractors. In determining whether the Lease is

---

**3.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**4.** *McKibben v. Chubb,* 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

**5.** *Id.*

truly a lease as distinguished from a disguised sale or security agreement, the Court looks to state law and particularly to § 1–201(37) of the Uniform Commercial Code which contains the definition of "security interest." *See Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)(the existence, nature and extent of a security interest in property is governed by state law). This uniform section was revised in 1986 and the revision adopted in Kansas in 1991. Kan. Sess. L.1991, ch. 295, § 82.

The threshold question before the Court is whether the Court should apply Oregon or Kansas law to govern the substantive issues raised by the parties. The Lease contains a choice of law provision designating that the Lease be interpreted pursuant to Oregon state law. Bancorp asserts that the law of Oregon should apply in this case, while the Trustee argues that Kansas law is more appropriate because Kansas has a more "reasonable relation" to this transaction. In reality, both states have a relation to the transaction, although Kansas clearly has more contacts. Bancorp has offices within Oregon and all documents have the Oregon office address, while Kansas has ties to the transaction because the debtor resides and the tractors are located in Kansas, the tractors were purchased and certificates of title issued in Kansas. Furthermore, while the Lease documents specify that Oregon law applies, it appears that the U.C.C. § 1–201(37), as enacted, is virtually identical in both jurisdictions, and that Oregon and Kansas case law on the applicability and enforceability of TRAC leases, particularly in the wake of the enactment of "new" § 1–201(37) is equally undeveloped.

■ In order to determine the applicable law in this case, the Court looks to the choice of law rules of the forum state. *Novack v. Business Credit Leasing (In re*

*Novack)*, 88 B.R. 353, 354 (Bankr. N.D.Okla.1988). Kan. Stat. Ann § 84–1–105 provides,

(1)"Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this act applies to transactions bearing an appropriate relation to this state.

(2) Where one of the following provision of this act specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of law rules) so specified:

Perfection provisions of the article on secured transactions. K.S.A. 84–9–102 and amendments thereto."

■ Additionally, Kan. Stat. Ann. § 84–9–102(1) states that Article 9 shall apply to any transaction intended to create a security interest in personal property, and § 84–9–102(2) states that Article 9 applies to leases intended as security. Thus, under § 84–1–105, parties to a transaction are generally free to chose which state's law shall govern disputes arising from that transaction unless, among other things, the dispute falls within the scope of § 84–9–102. *See also In re Bumgardner*, 183 B.R. 224, 226–27 (Bankr.D.Idaho 1995).

■ As noted by the *Novack* court in analyzing whether the apply Minnesota or Oklahoma law to determine if a lease was a true lease or disguised security interest, the application of Oregon law in this case would "violate a fundamental purpose of article 9: to create commercial certainty and predictability by allowing third party creditors to rely on the specific perfection and priority rules which govern the scope

of article 9." The court concluded that since the rights of third parties were at stake in the instant action, as here are the rights of the trustee, the Oklahoma court would apply Oklahoma law to determine the scope of article 9 of the Oklahoma U.C.C. 88 B.R. at 354. This Court agrees with this analysis, that it would violate third parties' right to apply Oregon law to determine whether the TRAC leases were true leases or disguised security agreements. Thus, the Court will apply Kansas law to determine whether the TRAC leases are true leases or disguised security agreements, however, since Oregon and Kansas have both adopted the "new" U.C.C. § 1–201(37), the outcome of this proceeding would be the same under the law of either state.

■ The issue of whether so-called "finance leases" are in reality security agreements has vexed the courts for many years. Former U.C.C. § 1–201(37) contained a deceptively simple formulation which provided merely that a transaction which included an option to purchase was not necessarily a secured transaction, but that when the lessee had the option to become the owner of the leased goods for no or nominal consideration, the lease was in fact intended for security. The actual legal nature of the transaction was to be gleaned from the facts of each case and the courts were expected to divine the intent of the parties from the documents and surrounding facts. As the Official Comment to current Kan. Stat. Ann. § 84–1–201(37) states,

Reference to the intent of the parties to create a lease or security agreement has led to unfortunate results. In discovering intent, the courts have relied on factors that were thought to be more consistent with sales or loans than leases. Most of these criteria, however, are as applicable to true leases as to security interests .... Accordingly, amended Section 1–201(37) deletes all reference to the parties intent.

Off. Comm. ¶ 37, Kan. Stat. Ann. § 84–1–201(37) (Supp.2001).

New § 1–201(37), with respect to leases, reads in part—

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement ....

Kan. Stat. Ann. § 84–1–201(37) (2001). A lease is defined in Kan. Stat. Ann. § 84–2a–103(j) as a transfer of the right to possession and use of goods for a term for consideration, but a sale or retention or creation of a security interest is not a lease. According to the Official Comment, "the task of sharpening the line between true leases and security interests disguised as leases continues to be a function of this

paragraph." Off. Comm. Kan. Stat. Ann. § 84–1–201(37) (2001).

In plainer terms, Kan. Stat. Ann. § 84–1–201(37) directs a Court's inquiry toward an objective determination of the nature of the agreement based upon the facts of each case which disregards the form of the agreement or the stated intent of the parties and "instead must look at the agreement's economic effect on the parties." See E.C. Hochstadter & J. Campo, *FF & E and the True Lease Question: Article 2A and Accompanying Amendment to UCC Section 1–201(37)*, 7 Am. Bankr.Inst. L.Rev. 517, 523 (Winter 1999 Ed.) (Herein "Hochstadter"). At stake is whether, based on all of the facts, the lessor retains some valuable reversionary interest in the lease property. *Id.* In order that a security interest rather than a lease be found, the statute requires that: (1) the lessee's obligation to pay rent not be terminable (the so-called "hell or high water clause"); and (2) the lessor not retain any residual value or interest in the "leased" property. Determination of the degree to which the lessor does not retain residual value is based upon four factors outlined in the statute: (i) the term of the lease equals or exceeds the economic life of the property; (ii) the lessee is bound either to renew the lease for the economic life of the goods or to become their owner; (iii) the lessee has the option to renew the lease for the remaining economic life of the goods for no or nominal consideration; or (iv) the lessee has the option to buy the goods for no or nominal consideration upon compliance with the lease. The degree to which consideration is nominal is further addressed in the statute as discussed below.

The Trustee's arguments that the Bancorp lease is a disguised secured transaction can be summarized as follows. First, the Trustee argues that the lease is not terminable and that the debtors could have become owners of the tractors for what the Trustee believes is no consideration or nominal consideration. Second, the Trustee argues that a consideration of the economic realities of the transaction forces a conclusion that this transaction is in fact one intended as security. There is no question that the lease is non-terminable and that the first prong of the statutory two-part test for the existence of a security interest is met. The debtors were obligated to pay all of the rents due under the Lease. Where the Trustee errs, however, is in his contention that the second prong of the test, that pertaining to the retention by lessor of residual value, is met because the debtors could have acquired these tractors at the end of the Lease's term for nominal consideration.

As previously noted, had debtors completed the term of the lease and opted to acquire the tractors, they would have been required to pay the Residual Value of some $93,198.70 plus a termination fee of $500 for the vehicles. The Trustee argues that, under any of the three lease-end scenarios (purchase, surrender, or holdover), the debtors would have been required to pay the Residual Value and, thus, might as well have purchased the tractors. The Trustee relies on the terms of the TRAC Addendum which provide that Bancorp is "entitled to recover" not only the rents, but also the Residual Value. The Trustee offers as support the authority of *In re Zerkle*, 132 B.R. 316 (Bankr. S.D.W.Va.1991). In *Zerkle*, the bankruptcy court held that TRAC leases create an option to purchase for no additional consideration. This holding is based on the reasoning that, because the debtor is required to guarantee that the lessor receive either the Residual Value or the leased property plus payment for any diminution of Residual Value at the end of the lease term, the debtor's consideration to purchase is es-

sentially nominal. This decision was taken, however, under the old version of § 1–201(37). This Court respectfully disagrees with the *Zerkle* court's view. Moreover, the Trustee's argument entirely overlooks Kansas' specific enactment on this subject, Kan. Stat. Ann. § 84–2a–110(a), which was enacted by the same 1991 Legislature that enacted new § 1–201(37) and which states that "an agreement involving the leasing of motor vehicle or trailer does not create a sale or security interest solely because the agreement provides for an increase or decrease adjustment in the rental price of the motor vehicle or trailer based upon the amount realized upon the sale or other disposition ... following the termination of the lease." This statute hobbles the Trustee's argument that TRAC leases are (at least as to vehicles and trailers), by definition sales or security transactions.

The TRAC Addendum provides that if the lessee decides not to purchase the vehicle, it must return the vehicle which is then sold. If the vehicle's sale brings less than the Residual Value, the lessee makes up the deficiency. If the vehicle brings more, the lessee is entitled to the surplus. When the lessee spurns the purchase option, he "pays" the Residual Value only in the sense that he returns the vehicle (and pays any shortfall between the realized value of the vehicle and the Residual Value). Were this the badge of a disguised sale, nearly every lease would be subject to the Trustee's attack. Rather than creating an arrangement which effectively forces the lessee to purchase, the TRAC provision instead provides valuable incentive to the lessee to maintain the vehicle so that, upon its return to the lessor, he will not be obligated for any Residual Value shortfall.

Whether the consideration for purchase of the property as lease's end is "nominal" is also addressed in Kan. Stat. Ann. § 84–1–201(37). The statute states, in part—

For purposes of this subsection (37):

(a) Additional consideration is not nominal if (i) when the option to renew the lease is grant[ed] to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. *Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised:*

. . . .

Kan. Stat. Ann. § 84–1–201(37) (emphasis added). The Lease does not provide for a contemporary determination of "fair market value" at which the lessee may purchase the goods. The Residual Value, determined at the outset of the Lease, is the option price. Subsections (a)(1) and (a)(2) thus do not apply. The statute does, however, set forth that additional consideration is nominal if it is less than the reasonably predicable cost of performing if the option is not exercised. Under Bancorp's Lease, if the lessee declines to purchase and instead returns the vehicles, his "reasonably predictable cost of performing" is limited to making up the shortfall between Residual Value and Market Value which, in the worst case, can only *equal* the Residual Value (assuming the Market Value of the vehicles as determined under the documents is zero). If he holds over, his liability to the lessor is six more months' rent, or $48,771.64. In the event of a holdover, the lessee's cost of performing is substantially less than the purchase option price. This Court therefore re-

spectfully disagrees with the *Zerkle* court's conclusion that TRAC clauses result in purchase option consideration being "nominal" under the current version of the U.C.C.

The Trustee's reliance on *Percival Const. Co v. Miller Auctioneers, Inc,* 532 F.2d 166 (10th Cir.1976) (holding under the old § 1–201(37) that a purchase option price of less than 25 percent of the original list price of the goods is per se nominal) and *In re Fashion Optical,* 653 F.2d 1385 (10th Cir.1981) (recognizing *Percival* as establishing the 25 percent rule) is misplaced, particularly in light of the enactment of "new" § 1–201(37). While this Court is bound by controlling Tenth Circuit precedent, the authority of these cases has been superseded by the 1991 enactment. Moreover, it is certainly possible that an option price of less than 25 percent might well constitute the fair market value of the goods being purchased and might well also constitute more than a nominal sum. Indeed, White and Summers conclude that the enactment of new § 1–201(37) "disavows percentage tests." See White & Summers, *Uniform Commercial Code* § 30–3 (4th ed. 1995 & Supp.2001). Two federal courts sitting in Kansas agree. *See In re Beckham,* 275 B.R. 598 (D.Kan. 2002) *aff'g Morris v. Dealers Leasing, Inc. (In re Beckham),* No. 99–12124, Adv. No. 00–5218 (Bankr.D. Kan. June 26, 2001). Under any theory, the amount required to be paid by the lessee under the Lease is simply not "nominal." To retain these tractors, lessee would have been required to pay over $93,198.70 plus the termination fee. Indeed, had the debtors held over for an additional six months (at a cost exceeding $48,000.00), they would still have been required to pay in this amount.

The Court must also look to the "economic reality" of the transaction before concluding its analysis. *See In re Edison*

*Bros. Stores, Inc.,* 207 B.R. 801, 811 (Bankr.D.Del.1997)(citing *In re Zaleha,* 159 B.R. 581, 586 (Bankr.D.Idaho 1993)). In support of his contention that Bancorp has retained no "entrepreneurial stake" in the tractors, the Trustee notes that the lessee is required under the documents to pay taxes and insurance on the vehicles, to provide for their maintenance, and generally to assume the risk of loss concerning them. This, he argues, indicates that the lessor has retained no reversionary interest in the vehicles. This position is not novel. The Trustee draws support from *In re Tulsa Port Warehouse Co., Inc.,* 690 F.2d 809 (10th Cir.1982)(Where lessee required to insure, pay tax and license fees on goods, and to maintain them, even in the absence of an option to purchase, lessee holds all incidents of ownership except bare title; lease in fact a secured transaction). Based on this authority, the Trustee asserts that TRAC leases are, as a matter of law in the Tenth Circuit, actually secured transactions. The Trustee even goes so far as to suggest that the revision to § 1–201(37) in no way displaces the holding in *Tulsa Port Warehouse* because the statute only served to shift the analysis away from the intent of the parties toward a review of the economic realities. This argument ignores the plain language of the new statute pertaining to economic realities. In fact, the statute states, *inter alia*—

A transaction *does not* create a security interest merely because it provides that

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(b) *the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registra-*

*tion fees, or service or maintenance costs with respect to the goods,*

(c) the lessee has an option to renew the lease or to become the owner of the goods,

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

Kan. Stat. Ann. § 84–1–201(37)(Emphasis added). Trustee's argument is substantially undercut by the enactment of subsection (b), *supra.* While it is true that the indicators pointed out by the Trustee at one time were the badges of a secured transaction, "[c]ourts deciding cases under the new UCC follow the approach taken by the drafters, namely, that most of these case law factors are found in true leases." Hochstadter at 550 (citations omitted). As this commentator has suggested,

"Courts interpreting both Old and New UCC 1–201(37) have consistently held that the principal characteristic of a lease, which distinguishes it from a secured transaction, is that it allows the lessee the right to use the property with an attendant opportunity to return the property to the lessor while it still has 'substantial useful economic life.' "

Hochstadter at 533.

Here, the lessees' obligation to keep the vehicles insured, to maintain them and to pay taxes pertaining to them are entirely consistent with common net lease provisions and do not of themselves indicate of the creation of an equity in the lessee.

Under the economic realities of this Lease, the lessees were left with no significant equity. Instead, they had the "option" to come up with over $93,000.00 to purchase the vehicles even after five years of rent payments. While there is no indication either in the Lease or in the record what the "fair market value" of these vehicles might have been at term's end, the Court notes that the vehicles were repossessed by Bancorp and sold for $285,000.00 a little less than one year into the five year lease term. This is approximately sixty-one percent of the acquisition cost described in the Lease. From this, the Court concludes that the Residual Value of $93,198.70 would likely be much greater than the actual fair market at the end of the five-year term. In short, Bancorp retained a significant reversionary interest in the vehicles leased under the Lease. The debtors obtained no meaningful equity in them. While under Old § 1–201(37) and the rule of *Tulsa Port Warehouse,* the Trustee might have prevailed on his complaint, the enactment of the new section requires another result. Bancorp is entitled to judgment as a matter of law that the Lease is indeed a financing lease rather than a secured transaction.

While this determination renders moot the Trustee's contention that Bancorp failed to adequately perfect its alleged security interest in the vehicles, this Court notes its disagreement with that contention. Even had this Court found the Lease to create a secured transaction, Bancorp's security interests would be adequately perfected and the Trustee's hypothetical lien avoiding powers under 11 U.S.C. § 544 would be of no avail here. The Court rejects the Trustee's assertion that Bancorp's being named as an "owner" rather than a "lienholder" is not sufficient substantial compliance with the requirements of Kan. Stat. Ann. § 84–9–302 and

Kan. Stat. Ann. § 8–135. In a decision entered in this same bankruptcy case, *Morris v. CIT Group/Equipment Fin., Inc. (In re Charles)*, 268 B.R. 575 (Bankr. D.Kan.2001), former United States Bankruptcy Judge (now District Judge) Julie A. Robinson held that CIT, who purported to hold a lease with these debtors, had substantially complied with the Kansas title statutes when it had itself named on the leased trucks' titles as an owner rather than a lienholder.

It is clear to this Court, as it was to Judge Robinson, that substantial compliance with the methods of perfection are what is required under former Article 9. As former Kan. Stat. Ann. § 84–9–402(8) states, "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Moreover, old Kan. Stat. Ann. § 84–9–408 expressly provides that a lessor may file a financing statement covering its leased property, that such filing alone does not render the lease a secured transaction, and that if the lease is later found to be security agreement, the security interest is perfected by the filing. There is be no reason why a parallel rule should not apply with respect to motor vehicles. Professor Clark has suggested that when a motor vehicle lease is ultimately determined to be a secured transaction, placement of the secured party's name on the certificate of title as owner rather than lienholder "should be sufficient because no third party has been misled." 2 Barkley Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* § 12.03, at 12–23 (Rev. ed.2001)(citing *In re Skyland, Inc.*, 61 B.R. 314 (W.D.Mich. 1986)). This Court notes that these authorities, along with Judge Robinson's original opinion, are cited with approval in United States District Judge Monti Belot's affirmance of Judge Robinson's decision, *Morris v. CIT Group/Equipment Financ-*

*ing, Inc.*, No. 01–1375, slip op. at 6–7 (D.Kan. February 13, 2002).

This Court, like Judges Belot and Robinson, is hard put to see how any lien creditor viewing the record would be misled when discovering Bancorp's name on the these vehicles' titles as owner rather than lienholder. At a minimum, a competing lender or prospective buyer would be placed on notice that Bancorp had *some* form of interest in the goods and any such interested party could then engage in appropriate inquiry both of the debtors and of Bancorp to determine the nature and extent of Bancorp's interest. That, after all, is the purpose of perfection in the first place. Were the Lease to be found to have created a secured transaction, Bancorp's security interests created thereunder would be properly perfected.

Summary judgment is therefore granted to Bancorp. A Judgment on Decision will issue this day.